UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 2:23CR00009 |
| | : |
| RODNEY ALLEN PICKETT | : |

### NOTICE OF INTENT TO INTRODUCE EXPERT TESTIMONY

The United States intends to offer evidence under Rules 702, 703, and 705 of the Federal Rules of Evidence in its case-in-chief at trial in this case.

**1. Notice of Evidence under Rules 702, 703, and 705**

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the United States provides the following disclosure concerning expert testimony that the United States plans to introduce pursuant to Rules 702, 703, and 705 of the Federal Rules of Evidence. The United States reserves the right to offer additional testimony by these experts, or other expert witness(es), and for the experts to amend or adjust their opinions and bases therefor, based on information perceived by or made known to the experts before or during trial.

**A. ATF Senior Special Agent Ryan Temm**

The United States intends to offer the expert testimony of Senior Special Agent Ryan Temm, who is employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in Bristol, Virginia. His updated curriculum vitae has been produced and includes a list of cases in which he has testified as an expert at trial or by deposition during the previous four years. *See* Ex. 1. Senior Special Agent Temm has not authored any publications in the previous ten years.

Senior Special Agent Temm is expected to testify as to common distribution amounts of methamphetamine, the appearance and packaging of methamphetamine, words used to describe or name quantities of methamphetamine, code words used in the sale and distribution of

methamphetamine, materials used in the sale and distribution of methamphetamine, common ways drug dealers are paid for methamphetamine, and the nexus between drug trafficking and firearms. Specifically, Senior Special Agent Temm is expected to offer the following expert opinions:

- Approximately 150 grams is considered a distribution quantity of methamphetamine, as opposed to a personal use quantity of methamphetamine;

- It is common for drug traffickers to utilize code words and phrases when discussing the illegal distribution and sale of narcotics;

- Digital scales and plastic baggies are items commonly used in the sale and distribution of methamphetamine and are indicative of drug trafficking;

- Drug dealers commonly use and/or accept cash and/or money transfer applications such as Cashapp to pay for drugs; and

- Drug distributors typically carry firearms to provide intimidation during drug transactions and to protect themselves, their drugs, and their money.

- A drill press is commonly used to manufacture privately made firearms.

The bases of Senior Special Agent Temm's opinions are his education, training, and experiences as a law enforcement officer and agent conducting criminal investigations related to illegal drugs and firearms, which are set forth in his curriculum vitae.

_____
ATF Senior Special Agent Ryan Temm

### B. Lora Lopez

Absent a signed stipulation of the parties, the United States intends to offer the expert testimony of Lora C. Lopez, a Senior Forensic Chemist employed by the United States Department of Justice, Drug Enforcement Administration's Mid-Atlantic Laboratory in Largo, Maryland. Ms. Lopez's curriculum vitae has been produced and includes a list of cases in which she has testified as an expert at trial or by deposition during the previous four years, as well as a list of any publications she has authored in the previous ten years. *See* Ex. 2.

In connection with this matter, Ms. Lopez prepared a Chemical Analysis Report dated April 17, 2023 ("Lopez Report"), which is attached as Exhibit Three. She will testify in accordance with the Lopez Report as to the results of her examination of a ziplock plastic bag that contained crystalline substance (listed as Item 29 in the Lopez Report). Ms. Lopez will opine that Item 29 had a gross weight of 85.7 grams and a net weight of 27.53 grams +/- 0.01 grams. *See* Ex. 3. She will testify that the net weight of Item 29 was determined by direct weighing of the crystalline substance and that the net weight uncertainty value of +/- 0.01 grams represents an expanded uncertainty estimate at the 95 percent level of confidence. *Id.* As explained in her report, Ms. Lopez will testify that Item 29 contained methamphetamine hydrochloride, a Schedule II controlled substance, with a substance purity of 99 percent +/- 6 percent, and that the amount of pure substance was 27.25 grams +/- 1.66 grams. *Id.*

Ms. Lopez is further expected to testify that she applied scientifically accepted techniques and testing methods, including Gas Chromatography, Gas Chromatography/Mass Spectrometry, and Infrared Spectroscopy as stated in the Lopez Report, as well as her knowledge, skill, experience, training, and education, to reach the opinions stated in her report. *See id.* [1]

---

[1] Ms. Lopez, the other DEA chemists (Ms. Rebecca Wang and Ms. Michaela Harper), and ATF Firearms Enforcement Officer Wayne Moser are exempt from signing the disclosure because they previously

### C. Rebecca Wang

Absent a signed stipulation of the parties, the United States intends to offer the expert testimony of Rebecca Wang, a Senior Forensic Chemist employed by the United States Department of Justice, Drug Enforcement Administration's Mid-Atlantic Laboratory in Largo, Maryland. Ms. Wang's curriculum vitae has been produced and includes a list of cases in which she has testified as an expert at trial or by deposition during the previous four years, as well as a list of any publications she has authored in the previous ten years. *See* Ex. 4.

In connection with this matter, Ms. Wang prepared a Chemical Analysis Report dated March 31, 2023 ("Wang Report One"), which is attached as Exhibit Five. She will testify in accordance with the Wang Report One as to the results of her examination of a ziplock plastic bag containing crystalline substance (listed as Item 6 in the Wang Report One). Ms. Wang will opine that Item 6 had a gross weight of 38.1 grams and a net weight of 3.66 grams +/- 0.01 grams. *See* Ex. 5. She will testify that the net weight of Item 6 was determined by direct weighing of the crystalline substance and that the net weight uncertainty value of +/- 0.01 grams represents an expanded uncertainty estimate at the 95 percent level of confidence. *Id.* As explained in her report, Ms. Wang will testify that Item 6 contained methamphetamine hydrochloride, a Schedule II controlled substance, with a substance purity of 95 percent +/- 6 percent, and that the amount of pure substance was 3.47 grams +/- 0.22 grams. *Id.* She is further expected to testify that she applied scientifically accepted techniques and testing methods, including Gas Chromatography/Mass Spectrometry and Infrared Spectroscopy as stated in the Wang Report One, as well as her knowledge, skill, experience, training, and education, to reach the opinions stated in her report. *See id.*

---

provided signed reports that contain all the opinions and bases and reasons for them. *See* Fed. R. Crim. P. 16(g)(v).

Ms. Wang also prepared a second Chemical Analysis Report dated March 31, 2023 ("Wang Report Two"), which is attached as Exhibit Six. She will testify in accordance with the Wang Report Two as to the results of her examination of a plastic bag containing crystalline substance (listed as Item 23 in the Wang Report Two). Ms. Wang will opine that Item 23 had a gross weight of 518.1 grams and a net weight of 444.7 grams +/- 0.2 grams. *See* Ex. 6. She will testify that the net weight of Item 23 was determined by direct weighing of the crystalline substance and that the net weight uncertainty value of +/- 0.2 grams represents an expanded uncertainty estimate at the 95 percent level of confidence. *Id.* As explained in her report, Ms. Wang will testify that Item 23 contained methamphetamine hydrochloride, a Schedule II controlled substance, with a substance purity of 95 percent +/- 6 percent, and that the amount of pure substance was 422.4 grams +/- 26.6 grams. *Id.* She is further expected to testify that she applied scientifically accepted techniques and testing methods, including Gas Chromatography/Mass Spectrometry, Infrared Spectroscopy, and DEA 503/UV-Vis Spectroscopy as stated in the Wang Report Two, as well as her knowledge, skill, experience, training, and education, to reach the opinions stated in her report. *See id.*

Finally, Ms. Wang prepared a Chemical Analysis Report dated March 29, 2023 ("Wang Report Three"), which is attached as Exhibit Seven. She will testify in accordance with the Wang Report Three as to the results of her examination of five ziplock plastic bags containing crystalline substance (listed as Item 24 in the Wang Report Three). Ms. Wang will opine that Item 24 had a gross weight of 150.2 grams and a net weight of 77.90 grams +/- 0.01 grams. *See* Ex. 7. She will testify that the net weight of Item 24 was determined by direct weighing of the crystalline substance and that the net weight uncertainty value of +/- 0.01 grams represents an expanded uncertainty estimate at the 95 percent level of confidence. *Id.* As explained in her report, Ms. Wang will testify that Item 24 contained methamphetamine hydrochloride, a Schedule II controlled substance, with

a substance purity of 96 percent +/- 6 percent, and that the amount of pure substance was 74.78 grams +/- 4.67 grams. *Id.* She is further expected to testify that she applied scientifically accepted techniques and testing methods, including Gas Chromatography/Mass Spectrometry, Infrared Spectroscopy, Marquis Color Test, and DEA 503/UV-Vis Spectroscopy as stated in the Wang Report Three, as well as her knowledge, skill, experience, training, and education, to reach the opinions stated in her report. *See id.*

### D.  Michaela Harper

Absent a signed stipulation of the parties, the United States intends to offer the expert testimony of Michaela M. Harper, a Senior Forensic Chemist employed by the United States Department of Justice, Drug Enforcement Administration's Mid-Atlantic Laboratory in Largo, Maryland.  Ms. Harper's curriculum vitae has been produced and includes a list of cases in which she has testified as an expert at trial or by deposition during the previous four years, as well as a list of any publications she has authored in the previous ten years.  *See* Ex. 8.

In connection with this matter, Ms. Harper prepared a Chemical Analysis Report dated April 11, 2023 ("Harper Report"), which is attached as Exhibit Nine.  She will testify in accordance with the Harper Report as to the results of her examination of a ziplock plastic bag containing crystalline substance (listed as Item 28 in the Harper Report).  Ms. Harper will opine that Item 28 had a gross weight of 50.8 grams and a net weight of 1.848 grams +/- 0.002 grams.  *See* Ex. 9.  She will testify that the net weight of Item 28 was determined by direct weighing of the crystalline substance and that the net weight uncertainty value of +/- 0.002 grams represents an expanded uncertainty estimate at the 95 percent level of confidence.  *Id.*  As explained in her report, Ms. Harper will testify that Item 28 contained methamphetamine hydrochloride, a Schedule II controlled substance, with a substance purity of 98 percent +/- 6 percent, and that the amount of pure substance was 1.811 grams +/- 0.111 grams.  *Id*.

Ms. Harper is further expected to testify that she applied scientifically accepted techniques and testing methods, including Gas Chromatography/Mass Spectrometry, Infrared Spectroscopy, and DEA 503/UV-Vis Spectroscopy as stated in the Harper Report, as well as her knowledge, skill, experience, training, and education, to reach the opinions stated in her report. *See id.*

### E.  Stephen Levesque

Absent a signed stipulation of the parties, the United States intends to offer the expert testimony of Stephen Levesque, a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in Bristol, Virginia.  Special Agent Levesque's curriculum vitae is attached hereto and includes a list of cases in which he has testified as an expert at trial or by deposition during the previous four years.  *See* Ex. 10.  Special Agent Levesque has not authored any publications in the previous ten years.

In connection with this case, Special Agent Levesque prepared a written Report of Investigation dated March 23, 2023, which is attached as Exhibit 11.  He will testify in accordance with his report as to the results of his examination of the following: Glock Inc., model 26, 9mm pistol, SN: ADXN749 (Item 8); Palmetto State Armory, model AP-15, multi-caliber rifle, SN: SCB971793 (Item 12); Adams Arms Holdings, LLC, model AA-15, multi-caliber rifle, SN: AA0017816 (Item 13); Sig-Sauer, model 1911-22, .22 caliber pistol, SN: F186685 (Item 15); and Kimber, model Custom LW, .45 caliber pistol, SN: K818954 (Item 17).  He will testify that the firearms identified in the report are firearms as defined in 18 U.S.C. § 921(a)(3) and were not manufactured in Virginia; and he will opine that if the firearms were possessed in Virginia, then they traveled in or affected interstate commerce. Special Agent Levesque's opinions and analyses are set forth more specifically in his written report attached hereto.

Special Agent Levesque also prepared a written Report of Investigation dated June 20, 2023, which is attached as Exhibit 11a.  He will testify in accordance with the report as to the results of his examination of the various, specific rounds of ammunition listed in the report. He will testify that all the items identified in the report are ammunition as defined in 18 U.S.C. § 921(a)(17) and were not manufactured in Virginia; and he will opine that if the ammunition was

8

possessed in Virginia, then it traveled in or affected interstate commerce. Special Agent Levesque's opinions and analyses are set forth more specifically in his written report attached hereto.

Additionally, Special Agent Levesque is expected to testify as to common distribution amounts of methamphetamine, the appearance and packaging of methamphetamine, materials used in the sale and distribution of methamphetamine, and the nexus between drug trafficking and firearms. Specifically, Special Agent Levesque is expected to offer the following expert opinions:

- Approximately 150 grams is considered a distribution quantity of methamphetamine, as opposed to a personal use quantity of methamphetamine;

- Digital scales and plastic baggies are items commonly used in the sale and distribution of methamphetamine and are indicative of drug trafficking; and

- Drug distributors typically carry firearms to provide intimidation during drug transactions and to protect themselves, their drugs, and their money.

The bases of Special Agent Levesque's opinions are his education, training, and experiences as a law enforcement officer and agent conducting criminal investigations related to illegal drugs and firearms, which are set forth in his curriculum vitae.

_____
ATF Special Agent Stephen Levesque

### F. Wayne A. Moser, Jr.

Absent a signed stipulation of the parties, the United States intends to offer the expert testimony of Wayne A. Moser, Jr. as an expert witness in the field of technical firearms examination. Mr. Moser is employed by the ATF – Firearms Technology Criminal Branch as a Firearms Enforcement Officer. His curriculum vitae is attached hereto and includes a list of cases in which he has testified as an expert at trial or by deposition during the previous four years. *See* Ex. 12. Mr. X has not authored any publications in the previous ten years.

In connection with this case and relevant to this Notice, Mr. Moser analyzed and examined a Palmetto State Armory, Model PA-15, 5.56mm caliber firearm, serial number SCB971793 (suspected machinegun), and three cylindrical metal devices with no manufacturer's markings or serial numbers (suspected firearm silencers). The results of Mr. Moser's analyses and examinations are memorialized in a Report (the "Moser Report"), which is attached hereto as Exhibit 13.

With respect to the Palmetto State Armory, Model PA-15, 5.56mm caliber firearm, serial number SCB971793, which is listed as Item 12 in the Moser Report, Mr. Moser will testify consistent with the Report as to the physical characteristics of the firearm, including its markings, its condition, and its length. Mr. Moser will explain how he measured the length of the firearm and the barrel. He will testify that the receiver of the firearm has been modified by having holes drilled in the left and right sides and material removed from the fire control cavity for the installation of the automatic sear and automatic sear retaining pin. Mr. Moser will explain, consistent with the Moser Report, that the sole purpose for drilling the automatic sear pin holes is to manufacture a machinegun, and that drilling or indexing the holes for the automatic-sear pin, in the correct location, constitutes manufacturing the receiver of a machinegun. Mr. Moser will

testify that Item 12 also contains a three-position safety/selector, allowing it to be placed in the unmarked automatic-fire position and that, in the automatic-fire position, Item 12 function tests as a machinegun. Mr. Moser will explain, consistent with the Moser Report, how he separated the upper assembly from the receiver and observed a M16 machinegun auto-sear installed in the fire-control area. He will testify that Item 12 contains an M16 machinegun bolt carrier assembly and has been assembled utilizing the following M16 machinegun fire-control parts: hammer, trigger, disconnector, safety/selector, auto-sear, and auto-sear pin.

Consistent with the Moser Report, Mr. Moser will explain the details of how he test-fired Item 12 on May 23, 2023, in both the "non-automatic" and "automatic" settings and the results of such test-fires. Notably, Mr. Moser will testify that when he inserted a magazine containing two rounds of ammunition, charged and chambered the first round, placed the selector in the unmarked "automatic" (3 o'clock) position and pulled the trigger, Item 12 fired both rounds automatically with a single function of the trigger. Further, Mr. Moser will testify that when he inserted a magazine containing five rounds of ammunition, charged and chambered the first round and pulled the trigger, Item 12 fired all five rounds automatically with a single function of the trigger. Mr. Moser will testify based on his examination and analysis, as well as his training and experience, that Item 12 is (1) a weapon that will expel a projectile by the action of an explosive and contains the receiver of such weapon and therefore is a "firearm" as defined in 18 U.S.C. § 921(a)(3)(A) & (B); (2) is a "machinegun" as defined in 18 U.S.C. § 921(a)(24); (3) is a weapon that shoots, automatically more than one shot, without manual reloading, by a single function of the trigger, and incorporates the receiver of such a weapon, and therefore is a "machinegun" as defined in 26 U.S.C. § 5845(b); and (4) being a machinegun, is also a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

With respect to the first cylindrical metal device, which is listed as Item 13A in the Moser Report, Mr. Moser will testify consistent with the Report as to the physical characteristics of the device, including its markings, its condition, and its length and diameter. Mr. Moser will explain, consistent with the Moser Report, that Item 13A has a monolithic baffle core with an integral rear end-cap that has a hole threated to 1/2-28 TPI. He will describe the physical characteristics and uses of the monolithic baffle core as outlined in the Moser Report. He will also testify based on his analysis and examination that Item 13A bears no NFA manufacturer's marks of identification or serial number.

Further, consistent with the Moser Report, Mr. Moser will explain the details of how he conducted sound comparison testing of Item 13A on May 23, 2023, to determine the effectiveness of Item 13A in diminishing the report of a portable firearm. He will testify regarding the results of the sound comparison testing he conducted, including that Item 13A led to a sound reduction of 6.17 decibels, establishing that Item 13A is capable of diminishing the sound report of a portable firearm. Mr. Moser will testify based on his examination and analysis, as well as his training and experience, consistent with the Moser Report, that Item 13A is a device for silencing, muffling, or diminishing the report of a portable firearm, and therefore is a "firearm silencer" as defined in 18 U.S.C. § 921(a)(25) and, being a "firearm silencer" is a "firearm" as defined in 18 U.S.C. § 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7).

With respect to the second cylindrical metal device, which is listed as Item 20 in the Moser Report, Mr. Moser will testify consistent with the Report as to the physical characteristics of the device, including its markings, its condition, and its length and diameter. Mr. Moser will explain, consistent with the Moser Report, that Item 20 has a monolithic baffle core with an integral rear end-cap that has a hole threated to 1/2-28 TPI. He will describe the physical characteristics and

uses of the monolithic baffle core as outlined in the Moser Report. He will also testify based on his analysis and examination that Item 20 bears no NFA manufacturer's marks of identification or serial number.

Further, consistent with the Moser Report, Mr. Moser will explain the details of how he conducted sound comparison testing of Item 20 on May 23, 2023, to determine the effectiveness of Item 20 in diminishing the report of a portable firearm. He will testify regarding the results of the sound comparison testing he conducted, including that Item 20 led to a sound reduction of 1.63 decibels, establishing that Item 20 is capable of diminishing the sound report of a portable firearm. Mr. Moser will testify based on his examination and analysis, as well as his training and experience, consistent with the Moser Report, that Item 20 is a device for silencing, muffling, or diminishing the report of a portable firearm, and therefore is a "firearm silencer" as defined in 18 U.S.C. § 921(a)(25) and, being a "firearm silencer" is a "firearm" as defined in 18 U.S.C. § 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7).

With respect to the third cylindrical metal device, which is listed as Item 21 in the Moser Report, Mr. Moser will testify consistent with the Report as to the physical characteristics of the device, including its markings, its condition, and its length and diameter. Mr. Moser will explain, consistent with the Moser Report, that Item 21 has a monolithic baffle core with an integral rear end-cap that has a hole threated to 1/2-28 TPI. He will describe the physical characteristics and uses of the monolithic baffle core as outlined in the Moser Report. He will also testify based on his analysis and examination that Item 21 bears no NFA manufacturer's marks of identification or serial number.

Further, consistent with the Moser Report, Mr. Moser will explain the details of how he conducted sound comparison testing of Item 21 on May 23, 2023, to determine the effectiveness

of Item 21 in diminishing the report of a portable firearm. He will testify regarding the results of the sound comparison testing he conducted, including that Item 21 led to a sound reduction of 12.93 decibels, establishing that Item 21 is capable of diminishing the sound report of a portable firearm. Mr. Moser testify based on his examination and analysis, as well as his training and experience, consistent with the Moser Report, that Item 21 is a device for silencing, muffling, or diminishing the report of a portable firearm, and therefore is a "firearm silencer" as defined in 18 U.S.C. § 921(a)(25) and, being a "firearm silencer" is a "firearm" as defined in 18 U.S.C. § 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7).

Mr. Moser is further expected to testify that he applied standard operating procedures established by the ATF for conducting the testing described in the Moser Report and that he utilized these techniques and testing methods, as well as his knowledge, skill, experience, training, and education, to reach the opinions stated in his report.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

s/ Lena L. Busscher
VSB No.: 82353
Assistant United States Attorney
U.S. Attorney's Office
180 West Main Street, Suite B19
Abingdon, Virginia 24210
276-628-4161
276-628-7399 (fax)
E-Mail:USAVAW.ECFAbingdon@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on June 20, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for defendant.

                                                               s/ Lena L. Busscher
                                                              Assistant United States Attorney