CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

4/1/2026

LAURA A. AUSTIN, CLERK
BY:   K Ayersman
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 2:23-cr-00009 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| RODNEY ALLEN PICKETT, | ) | By:  Michael F. Urbanski |
| | ) | Senior United States District Judge |
| Petitioner | ) | |

## MEMORANDUM OPINION

Rodney Allen Pickett, proceeding pro se, has filed a motion for habeas corpus relief pursuant to 28 U.S.C. § 2255. ECF No. 178. The government responded by filing a motion to dismiss, ECF No. 190, to which Pickett has replied, ECF No. 191. Also pending are Pickett's motions for preparation of transcript at government expense, ECF No. 177, for expedited production of pre-trial transcripts, ECF No. 185, and for judgment and to expedite review of his § 2255 petition, ECF No. 188. Pickett has asked the court to hold an evidentiary hearing on his § 2255 motion. For the reasons discussed below, the court **DENIES** Pickett's request for an evidentiary hearing, **GRANTS** the government's motion to dismiss and **DISMISSES** Pickett's motion for habeas relief.

I.

On February 16, 2024, a jury convicted Pickett of the following offenses: conspiring to distribute or possess with intent to distribute a mixture or substance containing 500 grams or more of methamphetamine on or about or between August 2022 and March 2023 (Count 1); distributing a mixture or substance containing a detectable amount of methamphetamine on

or about January 19, 2023 (Count 2); distributing a mixture or substance containing a detectable amount of methamphetamine on or about February 8, 2023 (Count 3); distributing 5 grams or more of methamphetamine on or about February 9, 2023 (Count 4); possessing with intent to distribute 500 grams or more of methamphetamine on or about March 3, 2023 (Count 5); knowingly possessing a firearm or ammunition on or about March 3, 2023, after knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year (Count 6); knowingly possessing a firearm in furtherance of a drug trafficking crime (Count 7); and knowingly possessing a firearm silencer that was not identified by a serial number on or about March 3, 2023 (Count 9). The jury found Pickett not guilty of possessing a machine gun on or about March 3, 2023 (Count 8). Jury Verdict, ECF No. 133. On August 1, 2024, the court sentenced Pickett to a total of 240 months, consisting of 180 months each on Counts 1 through 5 and 60 months each on Counts 6 and 9, with those terms running concurrently with one another, but consecutively to a 60-month term imposed on Count 7.[1]

Pickett filed a notice of appeal and the Fourth Circuit Court of Appeals appointed counsel to represent him. ECF Nos. 155, 158. On April 28, 2025, the Fourth Circuit affirmed his conviction in an unpublished per curiam opinion, ECF Nos. 171, 172, and issued its mandate on May 20, 2025. ECF No. 173. Pickett filed the pending habeas petition on July 28, 2025. ECF No. 178.

---

[1] The original indictment in this case was filed on May 24, 2023. ECF No. 24. A superseding indictment was filed on June 27, 2023, adding "assorted rounds of ammunition" to the description of firearms and ammunition found at Pickett's residence to Count 6 and adding Count 9. ECF No. 60. A second superseding indictment filed on January 23, 2024, adding defendants James Looney and Chasity Holbrook to Count 1. ECF No. 106.

In his motion for habeas relief, Pickett argues that he received ineffective assistance of counsel when his attorney (1) failed to assert his right to a speedy trial under 18 U.S.C. § 3161 and the Sixth Amendment, either by contesting the motion or filing a motion to dismiss the indictment; (2) failed to develop an adequate defense; and (3) operated under a conflict. In its motion to dismiss, the government argues that Pickett has failed to allege facts that entitle him to relief or to an evidentiary hearing.

## II.

### A.  28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)). "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12. The court may dismiss a § 2255 motion without a hearing when the motion, any attached exhibits, and the record of prior proceedings conclusively show that the moving party is not entitled to

relief. United States v. Renrick, No. 6:11-CR-00338-JMC-16, 2019 WL 4140934, at *2 (D.S.C. Aug. 30, 2019) (citing 28 U.S.C. § 2255(b)).

"When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). The court does not weigh the evidence but reviews the facts in the light most favorable to the petitioner and determines whether there is a genuine issue of fact. Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *3 (E.D.N.C. May 20, 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (citing Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)).

## B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 688) ("The performance of counsel is measured in terms of

4

'reasonableness under prevailing professional norms.'") The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689. "The performance prong is satisfied when counsel provides reasonably effective assistance, including demonstrating legal competence, doing relevant research, and raising important issues." United States v. Carthorne, 878 F.3d 458, 465 (4th Cir. 2017) (citing Strickland, 466 U.S. at 687–90).

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A court need not address the performance standard before addressing the prejudice standard. Strickland, 466 U.S. at 697. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

Because Pickett is alleging ineffective assistance of counsel, it is important to note that from the time he made his initial appearance on April 24, 2023, until he was sentenced on August 1, 2024, he was represented by four different attorneys. At Pickett's initial appearance, Jay Hanson Steele was appointed to represent him. ECF Nos. 6, 9. Not quite two months later, on June 12, 2023, Pickett filed a pro se "motion to address the court," complaining that he asked Steele to "separate his charges into different trials," and to send the drugs seized in his case to an independent laboratory for analysis, but Steele would not comply with his wishes. ECF No. 39. Pickett also complained that Steele was sharing information with the prosecution.

5

Pickett indicated that he had reported Steele to the Virginia State Bar. Id. The next day, Steele filed a motion to withdraw as counsel. ECF No. 45. On June 14, 2023, United States Magistrate Judge Pamela Sargent held a hearing on the pending motions, after which she granted both and allowed Steele to withdraw from representing Pickett.

On June 16, 2023, Judge Sargent appointed John Jessee to represent Pickett. ECF No. 54. Approximately three months later, Pickett filed a pro se motion to "fire [his] attorney." ECF No. 79. Pickett was opposed to a motion for continuance that had been filed by the prosecution and complained that his attorney was not protecting his right to a "fast and speedy trial." He also complained that Jessee was not keeping him informed and was allowing the prosecution "time to get [their] case against [him] prolonged." Id. The next day, Jessee filed a motion to withdraw as counsel. ECF No. 81. On October 10, 2023, following a hearing, Judge Sargent granted both motions. ECF Nos. 86, 89.

On October 12, 2023, Judge Sargent appointed Donald Williams to represent Pickett. ECF Nos. 90, 91. Approximately six weeks later, Williams filed a motion to withdraw, explaining that upon receiving and reviewing evidence, he realized that he represented two of the police officers mentioned in the evidence, which created a conflict of interest that would have caused him to be unable to effectively cross-examine them. ECF No. 93.

On November 28, 2023, Judge Sargent granted Williams' motion to withdraw and appointed Charles Bledsoe to represent Pickett. ECF Nos. 94, 95. Bledsoe represented Pickett at trial and sentencing and filed a notice of appeal on his behalf on the day he was sentenced. On appeal, the Fourth Circuit appointed Dana Cormier to represent Pickett. ECF No. 158.

## III.

### A. Right to a Speedy Trial

For a person charged in federal court, the right to a speedy trial is grounded in both the Sixth Amendment guarantee of "the right to a speedy and public trial" for all criminal defendants, and the Speedy Trial Act, 18 U.S.C. § 3161. The Sixth Amendment right to a speedy trial protects the rights of an accused person to be treated according to "decent and fair" procedures and also protects the public's interest in moving cases efficiently through the criminal justice system. Barker v. Wingo, 407 U.S. 514, 519–20 (1972). Noting that the constitutional right to a speedy trial is a vague concept and "it is impossible to determine with precision when the right has been denied[,]" id. at 521, Barker set out a four-factor balancing test to assess whether a defendant's constitutional rights have been violated by a trial delay: (1) the length of the delay; (2) the reason for the delay; (3) whether and how the defendant asserted the right; and (4) prejudice to the defendant. Id. at 530–33.

The Speedy Trial Act, 18 U.S.C. § 3161, gives "more concrete expression to the general Sixth Amendment concerns . . . ." United States v. Pair, 84 F.4th 577, 589 (4th Cir. 2023). It "is intended to mandate an orderly and expeditious procedure for federal criminal prosecutions by fixing specific, mechanical time limits within which the various progressions in the prosecution must occur." United States v. Iaquinta, 674 F.2d 260, 264 (4th Cir. 1982). "The constitutional and statutory rights to a speedy trial should ideally operate in tandem. The Barker factors usefully illuminate the contours of the Sixth Amendment speedy trial right, but they are also indeterminate." Pair, 84 F.4th at 589. "[C]ourts have consistently recognized that '[i]t will be the unusual case where the time limits under the Speedy Trial Act have been

satisfied but the right to a speedy trial under the Sixth Amendment has been violated.'" Id. (quoting United States v. Bieganowski, 313 F.3d 264, 284 (5th Cir. 2002)).[2]

### (1) Statutory Claim

The first relevant deadline in the Speedy Trial Act is found in 18 U.S.C. § 3161(b), which provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such offense." Pickett was arrested on April 24, 2023, and indicted on May 24, 2023. ECF Nos. 7, 24. Thus, the indictment in his case was filed within thirty days of his arrest, in accordance with § 3161(b). See Fed. R. Crim. P. 45 (setting forth rules for computing time).

The next relevant deadline is found in § 3161(c).

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date occurs last.

---

[2] To the extent Pickett is attempting to bring a standalone claim that the court violated his right to a speedy trial, he cannot do so via this § 2255 petition. "In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999). Pickett did not raise this issue on direct appeal and has not alleged cause for the failure to raise the issue, actual prejudice resulting from the failure to do so, or demonstrated that a miscarriage of justice would result if the court did not entertain his collateral attack on the merits. Accordingly, the court will consider his complaint related to the timing of his trial only in the context of his ineffective assistance of counsel claim, i.e., that his counsel was ineffective for failing to contest the government's motion for a continuance or file a motion to dismiss based on violation of either the Speedy Trial Act or of his rights under the Sixth Amendment.

Pickett made his initial appearance on April 24, 2023, and was indicted on May 24, 2023. Because the indictment occurred after the initial appearance, the seventy-day clock began running on May 24, 2023. See also United States v. Ortega-Mendoza, 804 F.Supp.3d 620, 623 (M.D. N.C. 2025) (noting that defendant's first court appearance did not start the Speedy Trial Act clock because he was being held on a complaint rather than an information or indictment). Seventy days after May 24, 2023, was August 2, 2023. Pickett's jury trial was initially set to begin on July 18, 2023, well within the seventy-day period.

The statute allows for certain time periods to be excluded from the computation of time within which a trial must commence. 18 U.S.C. § 3161(h). See Zedner v. United States, 547 U.S. 489, 497 (2006) ("[T]he Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases.") Relevant to Pickett's motion is § 3161(h)(7)(A) which excludes from the seventy-day computation the following:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

The government moved to continue Pickett's trial on June 20, 2023, which was four days after Pickett's second attorney, John Jessee, was appointed. ECF Nos. 54, 56. The government advised the court that one of its witnesses, a senior forensic chemist at a Drug

Enforcement Administration laboratory, had analyzed drug evidence in the case and prepared a report. The government intended to call the chemist to discuss her findings regarding the drug evidence and noted that the defendant was unwilling to enter a stipulation regarding the analysis or report. The chemist would need to travel approximately six hours to attend the trial and was expecting a baby on July 28, 2023, which was ten days after the trial was scheduled to start. The chemist was medically restricted from traveling, and in addition, had pre-scheduled maternity leave and would not be working or available to testify before December 2023. The government advised the court that it was otherwise prepared to try the case, but for the unavailability of the witness. Mot., ECF No. 56.

The court ordered Pickett to respond to the motion and he did so via attorney Jessee on June 27, 2023. Am. Resp., ECF No. 59. Jessee advised the court that Pickett himself opposed any request for a continuance and did not consent to a waiver of his rights under the Speedy Trial Act. However, Jessee told the court that as he had just been appointed, he did not have sufficient time to properly investigate and effectively represent Pickett's interests at trial and asked the court to move the trial to a future date. Jessee stated that a delay in the trial was justified in order to properly research legal issues, investigate the underlying events, and otherwise prepare a proper defense. Id.

On June 29, 2023, the court granted the motion to continue the trial. The court acknowledged Pickett's opposition to the request for a continuance but also noted the government's argument that a material witness was unavailable until December 2023 and that Jessee had indicated that he needed additional time to prepare for trial. ECF No. 63.

10

Pickett argues that his attorney was ineffective for failing to object to the continuance in several ways, but his arguments are unavailing. Pickett first claims that the initial trial date of July 18, 2023, was set eighty-five days after his initial appearance, in violation of the seventy-day time limit. However, Pickett measures the start of the period from his initial appearance on April 24, 2023, which is incorrect. The statute specifies that the clock starts from the later of the defendant's initial appearance or the filing of the indictment. Pickett made his initial appearance on April 24, 2023, and was indicted on May 24, 2024, which started the clock. The time period expired seventy days later on August 2, 2023, and the trial date of July 18, 2023, fell within that time period.

Pickett next argues that the government did not provide any evidence or an affidavit to support its contention that the chemist would be out on maternity leave until December 2023. He cites no authority to support his assertion that a motion for a continuance by the government should be supported by evidence or affidavit and the court knows of none. Attorneys appearing in the Western District of Virginia must abide by the Rules of Professional Conduct adopted by the Virginia Supreme Court. See Local Rule 6(h) and the Federal Rules of Disciplinary Enforcement, adopted on November 4, 1992, as amended on November 8, 1998, and June 16, 2016.[3] Rule 3.3(a)(1) of the Rules of Professional Conduct requires that a lawyer shall not knowingly make a false statement of fact or law to a tribunal.[4] In the absence of evidence to the contrary, the court will assume that the United States

---

[3] https://www.vawd.uscourts.gov/court-information/local-rules-and-standing-orders/ (last viewed March 20, 2026).

[4] https://vsb.org/Site/about/rules-regulations/rpc-part6-sec2.aspx (last viewed March 20, 2026).

11

Attorney's representation to the court that a material witness was unavailable because of medical reasons was truthful.

Pickett further argues that the continuance in his case was unwarranted because the chemist's maternity leave was pre-scheduled and the government did not act with due diligence. However, the subsection of the statute he cites, § 3161(h)(3)(A), contains no requirement that the unavailability of a witness must be unexpected. Rather, it provides only that "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness" is excluded from the time calculation. As the chemist was unavailable due to the imminent birth of her child and being on maternity leave, the delay is properly excluded from the time calculation. Nor did Pickett provide any evidence that the government did not act with due diligence in obtaining the presence of the chemist and his conclusory allegation is insufficient to withstand the government's motion to dismiss or to entitle him to an evidentiary hearing. United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004).

Pickett also cites § 3161(h)(7)(C), which provides that "No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." Pickett argues that the subsection of the statute means that the continuance should not have been granted because the chemist's maternity leave was foreseeable and prescheduled. However, that is not a requirement for finding that a delay was not justified. Rather, the subsection states that no continuance will be granted for failure to obtain an available witness by the government. Under § 3161(3)(B), "an essential witness shall be considered unavailable whenever [her] whereabouts are known but [her]

12

presence for trial cannot be obtained by due diligence . . . ." (emphasis added). In this case, the chemist was "unavailable" under the statute because she was medically unable to travel and, therefore, the continuance was proper under § 3161(h)(7)(C).

Pickett further argues that his attorney should have objected to this court's order granting the motion for continuance, ECF No. 63, because it did not comply with § 3161(h)(7). That subsection provides that a period of delay can only be excluded from the time computation when the court makes an "ends-of-justice" finding and directs the court to consider (1) whether the failure to grant such a continuance would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice, (2) whether the case is so unusual or so complex that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section, or (3) if the case is not so unusual or complex by itself to require additional time, whether the failure to grant the continuance would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. Id. Pickett contends that the order issued by the court granting the continuance in his case lacked specificity, contained no date range for the duration of the delay, did not include a calculation or justification for the delay, and did not contain a proper "ends-of-justice analysis" or finding of case complexity under § 3161(h)(7).

Contrary to his assertion, the court's order stated the following:

> Upon consideration of the motion, defendant's response, and for the reasons stated therein, the court finds that the ends of justice

> served by granting a continuance outweigh the best interests of the public and the defendant in a speedy trial in that failure to grant a continuance would deprive the government of a material witness and deny defense counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

Ord., ECF No. 63. The language in the order tracks the statute and meets the standard for excluding the time period from the seventy-day time computation.

Nor does the statute require that an order granting a continuance contain a date range for the delay.[5] The docket shows that less than a month after the motion for continuance was granted, the court reset the trial to begin on February 12, 2024, later moving it back by two days to February 14, 2024. ECF Nos. 73, 101.

Pickett also argues that the order granting the continuance is not valid because it was signed with an "autopen." Opp'n to Mot. to Dism., ECF No. 191 at 4. The court digitally signed the order and such a signature has the same force and effect as if the judge had affixed a signature to a paper copy of the order. See Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means at 14.[6] Pickett's argument to the contrary is without merit.

---

[5] Pickett purported to quote United States v. Tunnessen, 763 F.2d 74, 78 (2d Cir. 1985) for its holding that "An open-ended continuance is inconsistent with the requirements of the Speedy Trial Act." Pet'r's Br., ECF No. 179 at 18. However, that quote does not appear in the case and the case does not otherwise contain that holding. In another instance, he cites United States v. Grimmond, 137 F.3d 823 (4th Cir. 1998), claiming the court held that a seven-month delay is presumptively prejudicial, but the case does not say that. Pet'r's Br., ECF No. 179 at 11. Pickett is cautioned that even though he is proceeding pro se and his pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520–21 (1972), inventing quotes from cases and otherwise misrepresenting legal authority to the court could result in sanctions, including the striking of pleadings.

[6] https://www.vawd.uscourts.gov/sites/Public/assets/File/court/ecfprocedures.pdf?cacheid=0.88623514112 39575 (last viewed March 20, 2026).

Finally, it was not ineffective assistance for attorney Jessee to agree to the motion for continuance because he needed more time to prepare for trial. The Speedy Trial Act "expressly permits a district court to grant an ends-of-justice continuance requested by defense counsel, as distinct from one requested by the defendant." Pair, 84 F.4th 577, 586 (4th Cir. 2023) (citing 18 U.S.C. § 3161(h)(7)(A)). The statute does not list consent of the defendant among the factors that a court should consider in granting an ends-of-justice continuance. Id. (citing § 3161(h)(7)(B)). But "whether the failure to grant a continuance 'would deny counsel for the defendant . . . the reasonable time necessary for effective preparation' is a factor the court 'shall consider' in making an ends-of-justice determination." Id. (quoting § 3161(h)(7)(B)(iv)). Attorney Jessee's request for additional time to prepare for trial was consistent with the Speedy Trial Act and reasonable under the Strickland standard.

In sum, the court's order granting a continuance in this case did not violate the Speedy Trial Act. Accordingly, Pickett's argument that his attorney was ineffective for failing to object to the government's motion or move for dismissal of the indictment based on the granting of the motion is without merit.

**(2) Sixth Amendment Claim**

Nor has Pickett made out a claim that his attorney was ineffective for failing to protect his Sixth Amendment right to a speedy trial. As set forth above, the four-part balancing test from Barker requires the court to examine the length of the delay, the reason for the delay, the defendant's diligence in asserting the speedy trial right, and any prejudice resulting from the delay. Barker, 407 U.S. at 530–33.

15

The first factor, length of the delay, is a threshold requirement. United States v. Grimmond, 137 F.3d 823, 827 (4th Cir. 1998) (citing United States v. Doggett, 505 U.S. 647, 651–52 (1992)). "If the delay is not uncommonly long, the inquiry ends there." Id. (citing Doggett, 505 U.S. at 652). In Doggett, 505 U.S. at 652 n.1, the Court suggested that depending on the charges, a delay of one-year is presumptively prejudicial. The Fourth Circuit has stated that "it may generally be said a delay of eight months or longer is presumptively prejudicial." United States v. Woolford, 399 F.3d 590, 598 (4th Cir. 2005) (citing 4 WAYNE R. LAFAVE, JEROLD H. ISRAEL, & NANCY J. KING, CRIMINAL PROCEDURE § 18.2(b) (2d ed.1999) (quoting Joseph, Speedy Trial Rights in Application, 48 Fordham L. Rev. 611, 623 n.71 (1980))). Pickett was indicted on May 24, 2023, and his trial originally was set to commence on July 18, 2023. After the continuance was granted, the trial began on February 14, 2024. ECF Nos. 31, 121. Between the indictment and trial, a total of 267 days, or 8 months and 22 days, passed. The length of the delay from July 18, 2023, until February 14, 2024, was 212 days, or 6 months and 28 days, and such a delay is not presumptively prejudicial under Doggett or Woolford. "Having failed to clear the threshold requirement, [Pickett] cannot show a violation of his Sixth Amendment right." United States v. Eccleston, 615 F. App'x 767, 775 (4th Cir. 2015). Although the court need not consider the remaining factors, id., doing so does not alter the conclusion that Pickett suffered no Sixth Amendment violation based on the continuance granted in his case.

The reason for the delay was to give the government time to procure the presence of an essential witness and to give Pickett's attorney an adequate opportunity to prepare for trial, both of which are valid reasons. See Barker, 407 U.S. at 532 ("[A] valid reason, such as a

16

missing witness, should serve to justify appropriate delay."); see also United States v. Souza, 749 F.3d 74, 82 (1st Cir. 2014) (finding valid reason for delay when witness needed to produce documents was on medical leave). Pickett argues that his counsel was ineffective for needing more than 30 additional days to prepare for trial. Opp'n to Mot. to Dism., ECF No. 191 at 9. However, under Strickland, courts are directed to apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and to assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689. Applying the standard, Jessee was in the best position to determine how much time he needed to prepare for trial. His non-opposition to the motion to continue was reasonable and provides no basis for finding he provided ineffective assistance.

Under the third factor, Pickett asserted his opposition to the continuance and his right to a speedy trial early in the proceedings and reasserted his opposition repeatedly. However, Pickett also contributed to the delay by refusing to enter a stipulation regarding the chemist's analysis or report, and by seeking new counsel shortly before the trial was to begin. While he may have had good reasons for making both those decisions, his actions led to the need for the chemist to appear to testify and to newly appointed counsel needing additional time to prepare for trial. Accordingly, this third factor weighs neither in favor nor against finding a violation of his right to a speedy trial under the Sixth Amendment.

The final factor of prejudice "is assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Barker, 407 U.S. at 532. The Court identified three interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize

anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired, with the third being the most serious. Id.

Pickett argues that his defense was impaired because "the Government delayed trial to build their weak case based on circumstantial evidence, while they negotiated two § 5K1.1 substantial assistance agreements with two co-defendants in exchange for their testimony against Movant." Pet'r's Br., ECF No. 179 at 16. This is a wholly conclusory allegation, and the government told the court in its motion to continue that it was ready to proceed to trial except for not having the chemist available to testify.

Pickett also claims that by the time trial commenced in February 2024, his home surveillance system had been dismantled and his property had been sold and he argues that the lack of video footage from the surveillance system prejudiced his defense. Opp'n to Mot. to Dism., ECF No. 191 at 12. However, he does not explain when the home surveillance system was dismantled or describe any effort he made to preserve relevant video evidence. He also claims that police body camera video was "beyond any retention period" but again, does not explain any effort he made to obtain relevant footage prior to his trial date, much less explain the basis of his assertion that it was too late to obtain the video. Id. In addition, his claim regarding the police body camera video is contradicted by a declaration he made stating "The Coeburn police body camera footage is part of the discovery in this case" and "My first attorney filed a FOIA request for this video, as Coeburn Police gave the video to the FBI." Aff., ECF No. 191-1 ¶¶ 9, 10. Finally, Pickett argues that witnesses' memories had faded regarding events that had occurred ten to twelve months earlier, Opp'n to Mot. to Dism., ECF

18

No. 191 at 12, but does not name which witnesses had faulty memories or point to any testimony where a witness complained of an inability to remember. Id.

Based on the foregoing, the court finds that Pickett's assertion that his Sixth Amendment right to a speedy trial was violated in his court proceedings is without merit. The delay of eight months was not presumptively prejudicial, the reasons for the delay were valid, and some of Pickett's decisions contributed to the delay. In addition, Pickett's claims of prejudice are "threadbare recitals of the elements of a cause of action supported by mere conclusory statements" which are insufficient to withstand a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See also United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)) ("'[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.'").

The court finds that Pickett's allegations are insufficient to show that the continuance in his case was granted in violation of 18 U.S.C. § 3161 or violated his right to a speedy trial under the Sixth Amendment to the Constitution. Accordingly, the court **DISMISSES** his claim of ineffective assistance of counsel related to the granting of the continuance in his case.

### B. Failure to Prepare an Adequate Defense

Pickett next argues that his attorney failed to prepare an adequate defense in several ways: (1) counsel failed to obtain video evidence that would have impeached the testimony of government witnesses and provided him with an alibi defense; (2) counsel failed to watch the entirety of the controlled-buy videos and also failed to show the entirety of the videos to the jury; (3) counsel failed to have seized contraband tested for DNA or fingerprint evidence; (4)

19

counsel failed to request a spoliation instruction based on the missing evidence. The court need not determine whether any of these decisions by counsel fell below an objective standard of reasonableness because Pickett cannot show prejudice based on any of them. Strickland, 466 U.S. at 697. Given the lack of prejudice, the court also need not determine which of Pickett's four attorneys might have been responsible for any of the alleged instances of ineffective assistance. A short summary of the evidence introduced at Pickett's trial will be helpful in the discussion of these claims.

At trial, an investigator and a confidential informant testified that the informant made three controlled buys of methamphetamine from Pickett at his home on three days in early 2023. In all, the confidential informant bought 33.5 grams of methamphetamine from Pickett. Trial Tr., ECF No. 163 at 194–229.

Westley Swindall, a Coeburn, Virginia police officer, testified that he executed an arrest warrant for Pickett on March 3, 2023. Swindall Tr. Test., ECF No. 165 at 8–10. James Looney, eventually named as a codefendant in this case, answered the door and retrieved Pickett from his bedroom. Id. at 9-10. Pickett went to the door and Swindall explained that he had a warrant for his arrest. He also told Pickett that he was looking for another person for whom he had a warrant, Jessica Chenault, and asked if he could search the home. Pickett gave his consent for the search. Id. at 10. There were several other people in the living room. Id. at 12. When Swindall searched Pickett's bedroom, he found a woman (not Chenault), in a closet and Swindall asked her to go to the living room where a deputy was standing by. Id. at 11. Swindall looked back in the closet and saw a box of 9 mm ammunition sitting on top of a safe in plain view. Id. at 11–12.

20

Swindall walked into another bedroom and saw a rifle case laying on a bed. At that point, Swindall confirmed that none of the other people in the house had outstanding warrants and he asked them to leave. Id. at 12. Swindall contacted his captain who told him to obtain a search warrant, which he did, and then executed the search warrant. Id. at 13.

In Pickett's bedroom closet, Swindall found, in addition to the box of ammunition on top of the safe, two firearm suppressors, or silencers, and a substance confirmed as methamphetamine in the safe. Id. at 19–23.[7] In a box at the foot of the bed in Pickett's bedroom, Swindall found two scales with weights for the scales, small baggies with residue on them, psychedelic mushrooms, additional methamphetamine in small individual plastic bags, .22 caliber ammunition, and .45 caliber ammunition. The total weight of the methamphetamine found in Pickett's bedroom was 523 grams. Id. at 27–36. In addition, in another container in Pickett's bedroom, Swindall found ammunition and AR-15 style magazines. Id. at 37–38.

In Pickett's living room, Swindall found AR-15 lowers and other firearm parts which appeared to have been modified. In the laundry room, he found a drill press with an AR-15 lower attached to it. He also found a box of ammunition in the kitchen. Id. at 39–44.

In a second bedroom, identified as being that of Pickett's son, Swindall found in a rifle case a loaded Adams Arms AR-15 style rifle with an attached silencer. The rifle case contained an additional AR-15 style magazine loaded with ammunition. Id. at 45–50. In a third bedroom, Swindall found a loaded .22 caliber handgun, a Palmetto "full auto machine gun" with a large

---

[7] Swindall asked the Coeburn Fire Department for assistance in breaking open the safe. Swindall Tr. Test., ECF No. 165 at 21.

21

capacity magazine, a homemade AR-15 style rifle, a loaded high-capacity magazine, and a large bag of .22 long rifle ammunition. Id. at 51–60. In the fourth bedroom, Swindall found a loaded .45 caliber handgun and a box of .45 caliber ammunition. Id. at 60–61.

### (1) Video Evidence

Pickett makes two claims related to video evidence. He first argues that his attorney was ineffective for failing to obtain footage from surveillance cameras at his house. Swindall testified that video surveillance cameras were located in the living room pointed at the door to Pickett's bedroom and to the kitchen. Id. at 41–42. Pickett argues that video from the surveillance cameras would have shown codefendant Looney "getting the combination to the safe in Movant's bedroom, bringing drugs and firearms onto the property, placing them in Movant's safe after Movant was arrested by the Coeburn police department, supporting an alibi defense." Pet'r's Br., ECF No. 179 at 21–22 (emphasis added). Pickett also claims that there is a "critical gap" in evidence and testimony regarding what happened between the time the occupants of the house left and the time the search warrant was executed. Opp'n to Mot. to Dism., ECF No. 191 at 15.

While there was testimony that cameras were seen in Pickett's house, there was no testimony or evidence that the cameras were on or operable or that any video was recorded or if so, whether it was preserved. In addition, even if this video footage existed, Pickett is asking the court to entertain the notion that the video would show that shortly after Pickett was arrested and law enforcement officers asked all the occupants of the house to leave, Looney and other unidentified individuals returned to his house and planted drugs and guns throughout the house before Officer Swindall returned and executed the search warrant. These

22

allegations have no basis in fact and strain credulity. As such, they are insufficient to establish that any of Pickett's attorneys were ineffective for failing to obtain the video footage and Pickett's claim to the contrary is subject to summary dismissal. Smith v. United States, No. 6:24-cv-04060-JFA-KFM, 2024 WL 4794718, at *4 (D.S.C. Sept. 26, 2024); Thorne v. United States, Nos. 1:16-cv-669 (LMB); 1:14-cr-165 (LMB), 2017 WL 1363313, at *3, 6, 10 (E.D. Va. Apr. 12, 2017).

Pickett also argues that the video surveillance footage would have shown who had access to his bedroom in the hours and days before the search, whether Looney or others entered the bedroom when Pickett was not present, what items were brought into or removed from the residence, and whether Pickett had exclusive control over the contraband. However, the jury heard testimony that Pickett's son lived at the house and that people came and went from the home and often spent the night. The jury also heard evidence that some of the firearms belonged to people other than Pickett. The fact that they were not shown video footage of the comings and goings did not prejudice Pickett's defense as the jury heard this evidence.[8]

Pickett next complains that his attorney was ineffective for not requesting video footage from Swindall's body camera. However, there is no indication in the record that Swindall was wearing a body camera or recorded video during Pickett's arrest or the execution of the search warrant. Pickett claims that the footage would have shown whether the guns and drugs were in plain view or hidden, how the safe was opened and by whom, and what Looney

---

[8] The jury apparently credited some of the testimony that the firearms belonged to other people, as they found Pickett guilty of possession of the Adams Arms Holdings Rifle and assorted rounds of ammunition, but did not find him guilty of possession of the machine gun or either of the handguns. Jury Verdict, ECF No. 133.

did after arriving at the residence and before the search warrant was executed. Again, the notion that Looney returned to the house after he was asked to leave and placed drugs in the safe before Swindall executed the search warrant is baseless and there is no reason to believe that body camera footage would have supported this nonsensical allegation. Additionally, whether the guns and drugs were in plain view or hidden is irrelevant because they were seized pursuant to a search warrant, which authorizes officers to search closets, chests, drawers, and containers in which a weapon might be found. Similarly, a warrant to search for drugs in a container authorizes the opening of packages found inside the container. United States v. Ross, 456 U.S. 798, 820–21 (1982). Accordingly, Pickett cannot show prejudice based on any failure by his attorney to obtain and review Officer Swindall's body camera video.

Finally, Pickett argues that his attorney was ineffective for not seeking a spoliation instruction "based on the Police and FBI's failure to preserve the body cam video evidence." Mot., ECF No. 18 at 21. In the absence of any evidence that the body camera video existed, this argument is baseless and cannot serve as a basis for finding ineffective assistance of counsel. Accordingly, Pickett's claims of ineffective assistance based on his attorneys' failure to obtain video footage from his surveillance cameras or Swindall's body camera are **DISMISSED**.

### (2) The Controlled-Buy Videos

The government showed the jury videos of three incidents where a confidential informant bought methamphetamine from Pickett. Pickett argues that in the videos he stated, "I am a convicted felon and don't mess with guns," and that he asked counsel to review the

videos in their entirety for their exculpatory value.[9] He argues that his attorney should have introduced the segments of the videos in which he rejected an offer to buy a firearm and that had his attorney done so, Pickett would have been found not guilty of the felon-in-possession charge. Pet'r's Br., ECF No. 179 at 24. However, once again, Pickett cannot show prejudice given the other evidence in the case.

In addition to the firearms, ammunition, and silencers being present in Pickett's house, three witnesses testified to seeing firearms in his house and to seeing him carry firearms. Looney testified that he saw Pickett with guns and drugs in the house, that he had seen an AR-15 assault rifle in front of the television in Pickett's bedroom on more than one occasion, and that he saw two handguns out in the open in the house. Looney Tr. Test., ECF No. 165 at 112–13. Similarly, James LaForce testified that he saw Pickett carry a gun when he bought methamphetamine from Looney and also testified that Pickett kept the guns at his house locked up in a safe. LaForce Tr. Test., ECF No. 165 at 146. LaForce also testified that he helped Pickett set up a trade of methamphetamine for a handgun. Id. at 147–48. Chasity Holbrook testified that she saw Pickett buy and sell drugs at Pickett's house and that she saw him with guns outside the house. Holbrook Tr. Test., ECF No. 165 at 167–75.

Thus, even if the jury had heard Pickett declare that as a convicted felon he didn't "mess with guns," it is unlikely that hearing him say that would have affected the outcome of the case. A finding of prejudice under Strickland hinges not on whether a court can be certain that counsel's performance had no effect on the outcome or whether it is possible a reasonable

---

[9] Pickett stipulated to knowing that he had previously been convicted of a felony. Second Stipulation, ECF No. 113.

doubt might have been established if counsel acted differently, but whether it is reasonably likely the outcome would have been different. Harrington v. Richter, 562 U.S. 86, 112 (2011) (citing Strickland, 466 at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. Given the evidence that Pickett possessed guns in this case, he cannot show a substantial likelihood that the jury would have acquitted him had they seen the entirety of the controlled-buy videos. Accordingly, his claim of ineffective assistance of counsel based on his attorneys' failure to review and show the jury the entirety of the controlled buys is **DISMISSED**.

### (3) DNA or Fingerprint Evidence

Pickett next argues that his attorney should have requested that the physical evidence be tested for fingerprints and DNA and that such testing could have proven his innocence. Because Pickett cannot show prejudice on the facts related to this claim, the court need not determine whether counsel's failure to test the evidence fell below an objective standard of reasonableness.

As set forth above, multiple witnesses testified that they saw drugs, firearms, ammunition, and silencers in Pickett's house and in some instances his bedroom. All three witnesses mentioned above testified that they either bought drugs from or sold drugs to Pickett. In addition, there was testimony that some of the items were found in other bedrooms in the house, or in common areas such as the kitchen and laundry room. In addition, the jury heard testimony that some of the firearms and other items found in the house belonged to people other than Pickett. Therefore, it would not be unexpected for the evidence to have other people's fingerprints or DNA on it. Nor would a lack of fingerprints or DNA on an

item have been probative, given the overwhelming nature of the testimony and other evidence against Pickett. Because Pickett has failed to establish a substantial likelihood of a different outcome in his trial based on a lack of DNA or fingerprint testing, his claim of ineffective assistance of counsel based on his attorneys' failure to have evidence tested is **DISMISSED**.

### C. Conflict of Interest

Pickett argues that his right to effective assistance of counsel was violated when his third attorney, Donald Williams, represented him for six weeks before discovering a conflict and moving to withdraw. "We have recognized that, as a general proposition, '[t]he effective performance of counsel requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation.'" United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) (quoting United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991)). "A necessary corollary to the right of effective assistance of counsel is the 'right to representation that is free from conflicts of interest.'" Burket v. Angelone, 208 F.3d 172, 184 (4th Cir. 2000) (citing Wood v. Georgia, 450 U.S. 261, 271 (1981)); see also Cuyler v. Sullivan, 446 U.S. 335, 345 (1980) (addressing conflict of interest claim as a Sixth Amendment right to effective assistance of counsel).

To establish that a conflict of interest resulted in ineffective assistance, a defendant must show more than a mere possibility of a conflict. Nicholson, 475 F.3d at 249 (citing Tatum, 943 F.2d at 375). He must show an actual conflict that adversely affected his attorney's performance. Id. In Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001), the Fourth Circuit described what a defendant must show:

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued.

27

Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. In the language of Tatum, the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." Tatum, 943 F.2d at 376. Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

Pickett has not made the requisite showing. Rather, he complains only that during the six weeks that Williams was representing him, no work was done on his case. Pet'r's Br., ECF No. 179 at 27. He argues that an evidentiary hearing is required so that the court can inquire as to what work Williams performed in the six weeks he was representing Pickett and whether opportunities for investigation, negotiation, or motion practice were lost. Opp'n to Mot. to Dism., ECF No. 191 at 26–27. Had Williams represented Pickett at trial, such inquiries might be valid, as they would enable Pickett to "identify a plausible alternative defense strategy or tactic that [Williams] might have pursued but did not." Mickens, 240 F.3d at 361. However, Williams advised the court of the potential conflict as soon as he learned of it, and Judge Sargent allowed him to withdraw and appointed new counsel shortly thereafter. Pickett cannot show that an actual conflict adversely affected his right to constitutionally adequate representation, as the appointment of new counsel eliminated the conflict. Accordingly, Pickett's claim that Williams provided ineffective assistance because he had a conflict of interest is **DISMISSED**.

### D. Evidentiary Hearing

Pickett asks the court to hold an evidentiary hearing in his case. Section 2255 provides that, "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the

28

United States attorney [and] grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255. "Thus, as a corollary, a court may dismiss a § 2255 motion if it is clearly inadequate on its face and if the petitioner would not be entitled to relief assuming the facts alleged in the motion are true." Stitt v. United States, No. 2:08cr108, 2012 WL 2878251 (E.D. Va. July 12, 2012). See also United States v. Hackley, 164 F. App'x 301, 304 (4th Cir. 2006) ("A district court can deny a § 2255 motion without a hearing if the record conclusively shows the prisoner is not entitled to relief.") In addition, "[a]llegations of 'a vague, conclusory, or palpably incredible nature' do not raise issues which require a full hearing." Raines v. United States, 423 F.3d 526, 531 (4th Cir. 1970) (citing Machibroda v. United States, 368 U.S. 487, 495 (1962)).

The court has construed the allegations of fact in Pickett's favor, except where they are baseless, speculative, conclusory or strain credulity. Accordingly, an evidentiary hearing is not necessary to resolve issues of fact in this case and Pickett's motion for a hearing is **DENIED**.

## IV.

Based on the foregoing, the court **DISMISSES** Pickett's motion for relief under § 2255, ECF No. 178. The court **GRANTS** the government's motion to dismiss, ECF No. 190. The court **DENIES** Pickett's request for an evidentiary hearing. The court also **DENIES** his motion for preparation of transcript at government expense, ECF No. 177, and for expedited production of pre-trial transcripts, ECF No. 185, and **DENIES as moot** his motion for judgment and to expedite review of his § 2255 petition, ECF No. 188. Because Pickett has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

29

An appropriate order will be entered.

Entered: *April 1, 2026*

Michael F. Urbanski
Senior United States District Judge