CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
June 25, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

UNITED STATES OF AMERICA, §
Respondent,
§ Case: 2:23-CR-00009-MFU-PMS1
v.
§
RODNEY ALLEN PICKETT, §
Movant.
§

# MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE AND BRADY VIOLATIONS

COMES NOW Rodney Allen Pickett, henceforth "Movant", appearing pro se, and respectfully moves this Honorable Court pursuant to Federal Rules of Criminal Procedure (Fed. R. Crim. P.) 33 for a new trial, based on newly discovered evidence and Brady violations under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1983), that materially impeaches the Government's trial evidence and undermines the confidence in the verdict. In support thereof, Movant States The Following To Wit;

## I. INTRODUCTION

This motion is based on newly discovered evidence from United States v. Chenault, Case No. 2:23-CR-00011-MFU-PMS-1, ECF No. 1 and 23, and statements made therein by Ms. Chenault and Senior Special Agent Ryan Temm, which contradict testimony by Government witness James Looney and Assistant United States Attorney ("AUSA") Danielle Stone in her closing arguments.

The Adams Arms M4 rifle which Movant was convicted of possessing was also an evidentiary item in Chenault. Records in that case concerning the date, location and intent of purchase are material to this case and was never disclosed during the release of Brady materials (ECF No. ). The withheld materials concern

ownership, intended recipient and circumstances surrounding the firearms purchase.

In the case at bar, the Government relied heavily upon testimony which alleged the firearm was acquired for Mr. Pickett. This evidence was not made accessible to Movant's trial counsel, nor was it made available at trial. Had the Government not withheld these Brady materials, a different outcome would have been likely had it been presented to the jury.

## II. FACTUAL BACKGROUND

According to the newly discovered evidence, Jessica Chenault falsely represented information in documents used to obtain an Adams Arms M4 rifle, which Movant was convicted of possessing in the instant matter.

The firearm was allegedly purchased at Rural Kings Guns, 640 Highway 58E, Norton, Virginia, 24273, (276) 325-7738, on December 26, 2022.

The newly discovered evidence further reflects:

1. The Adams Arms M4 with serial number AA017816, was allegedly intended for herself (Chenault, ECF No. 1, Pg.5 at 12).
2. WIllie Stout, identified at a salesman and former chief of police in Coburn, Virginia, possessed information concerning the firearm transaction.
3. A Bureau of Alcohol, Tobacco and Firearms ("ATF") report exists documenting facts inconsistent with the Government's presentation at trial;
4. Special Agent Temms report documents facts inconsistent with the Government's presentation in this case at trial.
5. Evidence from Chenault contradicts testimony of Government witness James Looney at Movant's trial.

The Government's case against Movant substantially relies upon the credibility of Looney's testimony concerning the purchase of the Adams Arms rifle. Had Movant and his counsel been aware of these statements and records in Chenault, they would have called

Chenault and Willie Stout as witnesses.

Despite Chenault being prosecuted by the SAME AUSA and court, the Government suppressed Brady materials and statements Chenault made concerning the purchase of the gun. The AUSA also suppressed the cooperation agreement co-defendant James Looney received for testifying against Movant at trial, which was revealed for the first time on day two (2) of Movant's trial during cross-examination by attorney Bledsoe.

On day (2) of Movant's trial, Judge Urbanski stated the disclosure of Looney's cooperation benefit "leans to bias and prejudice" Sen. Tr. 4 at 16-20. Mrs. Stone later objects, stating

> "Your Honor, I would like to note that Mr. Looney's plea agreement and the charges he was facing do not include the machine gun."

Sen. Tr. 5 1-25 at 7. Up until this point, Movant and counsel were unaware of the details of James Looney's plea agreement, which included a 5K substantial assistance departure and details of the machine gun, which Looney admitted to building. Looney admits to the benefit of avoiding the machine gun charge under 18 U.S.C. § 922(o) for testifying against Movant. Sen. Tr. 129 9-25 Ln. 18.

Testimony from co-defendant Chastity Holbrook conflicted with Looney's testimony, claiming the machine gun was built on Valentine's Day (Feb. 14, 2023) Sen. Tr. 173 1-25 at 16, admitting the machine gun was Looney's. Looney later testifies he built the machine gun the night before Movant's arrest. This contradicts AUSA Stone's statements to the jury, Sen. Tr. 98 1-25 at 17-24. Movant does not own a "Back to The Future" Delorean that would allow him to travel back in time to fire a machine gun modified on February 14, 2023 if it was not modified until March 2, 2023!

Later in the trial, Movant's attorney again tells the jury that James Looney is not charged with the machine gun, and testified to it. This is positive evidence of the Brady violation. Bledsoe's cross examination and statements to the jury could have been stronger had he had time to prepare had the AUSA not violated Brady. Sen. Tr. 102-103.

Additional Brady material lies in Chenault's case. Chenault

purchased the Adams firearm from Willie Stout, who was the former chief of police in Coburn, Virginia. Stout arrested Movant on numerous occasions and they had known each other for over 40 years. Stout's statements to Senior Special Agent Ryan Temm stated Chenault had a "male with her that he did not know." Chenault, ECF No. 1, pg. 5 ln. 7. Had Movant's counsel been aware of Stout and Wyckoff's statements to Special Agent Temm, attorney Bledsoe would have called them as witnesses at trial or entered the record from Chenault to the jury.

AUSA Stone prosecuted both Chenault and Pickett's cases, and knew the evidence in Chernault would be of interest to Pickett as it is Brady material.

## III. PRO SE STANDARD

Pro se motions an complaints are to be liberally construed, Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), and held "to a less stringent standard than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 1594, 30 L. Ed. 2d 652 (1972); Gordon v. Leeke, 574 F. 2d 1147, 1151 (4th Cir. 1978) cert denied, 439 U.S. 970, 99 S. Ct. 464, 58 L. Ed. 2d 431 (1978).

## IV. LEGAL STANDARD

1. Newly Discovered Evidence

Fed. R. Crim. R. 33 authorizes courts to grant a new trial "if the interests of justice so requires." A new trial may be granted on the basis of newly discovered evidence where the defendant demonstrates that:

1. The evidence is newly discovered;
2. The defendant exercised due diligence;
3. The evidence is not merely cumulative or impeaching;
4. The evidence is material to the issues involved;
5. The evidence would probably result in acquittal upon retrial.In the Fourth Circuit, the above test is referred to as the Mills test under Mills v. United States, 281 F. 2d 736, 738

2. Brady v. Maryland Violation

In order to establish a Brady violation, a defendant must show that the government failed to disclose evidence favorable to an accused where the evidence is material to the guilt or punishment, irrespective of the good faith or bad faith of the prosecutor. Evidence is favorable to the accused not only if it would exculapte the accused, but also if it could be used to impeach a government witness.

Further, the government has an affirmative duty to disclose all potentially exculpataory evidence to the accused where the evidence is material either to guilt or punishment. Brady materials within the possession of the U.S. Department of Justice must be promptly disclosed.

3. The Newly Discovered Evidence Materially Impeaches Critical Government Testimony

The Government relied upon law enforcement testimony to establish Movant's connection to the Adams firearm. The newly discovered evidence from Chenault undermines Looney's testimony by showing:

1. Jessica Chenault allegedly made false statements in documents related to the firearm purchase.
2. The firearm was allegedly purchased for Chenault, not Movant; and
3. Official reports and witness information contradict the AUSA's trial statements.

This is not ordinary impeachment evidence. Rather, it strikes at the heart of the government's factual theory and undermines the reliability of critical testimony from Looney to secure Movant's conviction. The standard for granting a new trial under Fed. R. Crim. P. 33 lies under United States v. Custis, 938 F. 2d 1335, 1359 (4th Cir. 1993). Custis lays out a four (4) pronged test, where all four (4) prongs must be met before granting a new trial:

(4th Cir. 1960), and requires all five (5) elements be established.

While newly discovered impeachment evidence ordinarily does not warrant a new trial, courts recognize an exception where the impeachment evidence demonstrates that a key witness's testimony was fundamentally unreliable and where the government's case rested substantially upon that testimony. United States v. Custis, 988 F. 2d 1355, 1359 (4th CIr. 1993)(quoted in United States v. Banks, 104 F. 4th at 511):

> "Newly discovered impeachment evidence may suffice to merit a new trial under Rule 33 if it impeaches the 'uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed,' and 'the government's case rested entirely on [that] testimony."

AUSA Stone, who prosecuted both Movant and Chenault, knew that Chenault's criminal complaint, written by FBI Senior Special Agent Ryan Temm, stated that Chenault purchased the gun for herself. United States v. Chenault, ECF No. 1, Pg. 5 at 12. Despite this, Stone solicited testimony from Looney via a plea agreement that omitted a charge under 18 U.S.C. § 922(o), despite knowing Loaney's testimony about the Adams Arms Rifle "to be false or simply allowed such testimony to pass uncorrected." United States v. Kelly, 35 F.3d 929, 932 (4th Cir. 1994). A new trial is required when the government's knowing use of false testimony could affect the judgment of the jury. See: Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). Under United States v. Burke, a defendant must demonstrate that a witness gave false testimony--but does not need to demonstrate perjury. Burke at LEXIS 14. "[D]ue process is violated not only where the prosecution uses perjured testimony to support its case, but also where it uses evidence which it knows creates a false impression of a material fact." Hamzie v. Bailey, 386 F.2d 390, 394 (4th CIr. 1967). "Evidence may be false either because it is perjured, or, though not itself factually accurate, because it creates a false impression of facts which are known not to be true." Id.

a) the evidence must be, in fact, newly discovered, i.e. discovered since trial;

b) the facts must be alleged from which the court may infer diligence on the part of the movant;

c) the evidence relied upon must not be merely cumulative or impeaching;

d) it must be material to the issues involved; and

e) it must be such, and of such nature, as that on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Roberts, 262 F. 3d 286, 293 (4th Cir. 2001) held that a new trial may be granted if the court is reasonably satisfied that testimony given by a material witness was false, without it the jury might have reached a different conclusion, and the party seeking a new trial was supported by false testimony; cert denied, 535 U.S. 991, 152 L. Ed. 2d 473, 122 S. Ct. 1548 (2002); see also, United States v. Wallace, 528 F. 2d 863, 866 (4th Cir. 1976).

Under both Custis and Roberts, the newly discovered impeachment evidence warrants a new trial because the Government's case substantially depended on testimony that is unreliable and false.

3. The Evidence Is Material and Would Likely Produce A Different Result

Had the jury heard evidence that the Adams Arms Rifle used to convict Movant was allegedly purchased by Jessica Chenault for herself, and that official documentation from the ATF, FBI and record in Chenault contradicted the Government's narrative, there exists a reasonable probability that the jury would have reached a different verdict.

The credibility of the Government's witness was central to the prosecution's case. New evidence showing that the gun Movant was charged with has contradictory claim of possession in Chenault's case with records naming her as the owner, would have

substantially affected the jury's assessment of guilt for this charge.

The interests of justice therefore require a vacatur of the sentence and a new trial.

## V. JURISDICTION

Movant has a pending Application for A Certificate of Appealability pursuant to 28 U.S.C. § 2255(c) and Fed. R. App. P. 22 (4th Cir. No. 26-6477) for his § 2255 motion (ECF No. 178, 179). This Court has jurisdiction to consider the Rule 33 motion despite the pending appeal. See United States v. Strom, 611 F. App'x 148, 149 (4th Cir. 2015)("A pending appeal, however, does not divest a district court of jurisdiction to entertain a motion for a new trial pursuant to Fed. R. Crim. P. 33. United States v. Cronic, 466 U.S. 648, 667 n.42, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

## VI. LEGAL ARGUMENT

### A. The Record in United States v. Chenault Constitutes Newly Discovered Evidence

Both the Criminal Complaint and Statement of Facts (ECF No. 1 and 23) concerning the purchase of the firearm was not adequately disclosed, investigated or understood at the time of trial. The report materially alters the factual basis presented to the jury regarding the firearm transaction.

This evidence demonstrates that the firearm was allegedly intended for Chenault---not Movant. This directly contradicts the Government's theory and Looney's testimony presented at trial.

### B. The Newly Discovered Evidence Materially Impeaches Critical Government Testimony

The Government relied upon law enforcement testimony to

establish Movant's connection to the Adams Arms Rifle. The newly discovered records from Chenault undermines that testimony by showing

1. Chenault allegedly made false statements in documents related to the firearm purchase;
2. The firearm was allegedly intended for herself, not Movant; and
3. Official reports, witness information contradict the Prosecution's statements at trial.

This is not ordinary impeachment evidence. This strikes at the heart of the Government's factual theory and undermines the reliability of critical testimony relied upon to secure the conviction. In addition, ECF No. 1 and 23 in Chenault state there is more evidence not discussed in these documents.

The Chenault complaint, paragraph 12, pg. 5 states that Willie Stout stated to investigators that Chenault had a "male with her who they did not know" when she purchased the firearm. Willie Stout, who is the former Coburn chief of police, knows Mr. Pickett as he arrested him on several occasions, and have known each other for over 40 years, which means the male who was with Chenault during the purchase was not Movant. Willie Stout should have been a witness at Movant's trial, but counsel was unaware of these facts due to the Government's violation of Brady. It must also be noted that ATF Special Agent Ryan Temm and AUSA Stone worked on both Chenault and Movant's cases, therefore they knew this evidence existed and was relevant to the case at bar.

To fully develop the record, Willie Stout, Jessica Chenault and Ryan Temm must be questioned in front of a jury concerning the circumstances and intended ownership of the Adams Arms M4 rifle that Movant was charged with. The record already shows that Coburn Police officer Swindell searched Pickett's alleged residence looking for Chenault, and found Chenault's Adams Arms rifle in a case, not in plain sight and in a room not identified as Pickett's.

Records from Chenault calls the government's theory into question. The only evidence tying Movant to the Adams M4 rifle is

testimony from Looney, who has a history of lying and received a 5K downward departure for testifying against Movant. AUSA Stone's failure to disclose Looney's expectation of leniency constitutes material impeachment.

C. The Evidence Is Material and Would Likely Produce a Different Result

Had the jury heard evidence that the firearm was allegedly purchased for Chenault instead of Movant, and that official FBI documentation contradicted the government's statements at trial, there exists a reasonable probability that the jury would have reached a different verdict.

The credibility of the government's witness was central to the prosecution's case. Evidence showing that a key witness provided inaccurate or misleading testimony would have substantially affected the jury's assessment of guilt.

Statements from the trial record support these facts, and Movant's defense was prejudiced by the Brady violatons.

Looney's testimony is the only evidence linking Movant to the gun. The undisclosed documents from Chenault contradict Looney's testimony. Because both Movant and Chenault were incarcerated at the same time, Movant was unaware that the Adams rifle in his case was involved in another federal crime. Testimony is needed from Willie Stout to identify who was with Chenault when she purchased the rifle and if he was present at Movant's house on March 3, 2023.

Because this new evidence is both exculpatory and material, it meets the standard under United States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) for a new trial. Bagley held that the "favorable" evidence includes exculpatory substantive evidence with impeachment value, and a reasonable probability that the result would have been different.

The jury's acquittal of Movant on possession of the machine gun, 18 U.S.C. 922(o) is evidence that the jury used testimony from Chastity Holbrook to acquit Movant (Sen. Tr. 101 at 7-17).

Evidence from Chenault and stronger cross-examination of Looney concerning his 5K agreement make it more probable that the jury would have acquitted Movant on the possession charge, 18 U.S.C. 922(g), as well.

D. Disclosure Failures Violate Movant's Right To Due Process

The Government's failure to disclose the details of Looney's plea agreement and the records in Chenault violates Brady and Movant's right to Due Process under the Fifth Amendment because this evidence is material to Movant's guilt and punishment, "irrespective of the good faith or bad faith of the prosecution." Kyles v. Whitley, 514 U.S. 419, 432, 115 S. Ct. 1555 131 L. Ed. 2d 490 (1995)(citaton omitted); Giglio, 405 U.S. 150, 154-55 (1972) (concluding that when the reliability of a witness may determine guilt or innocense, non-disclosure of evidence affecting credibility denies the right to due process). As such, a Brady violation occurs if evidence is (1) favorable to the accused (either exculpatory or impeaching), (2) suppressed by the prosecution (willfully or inadvertantly), and (3) material (prejudicial). Banks v. Dretke, 540 U.S. 668, 691, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004), as is in the case at bar.

This Court need look no further than Day 2 of the trial transcripts, Page 129 (Looney's redirect) where Looney admits to the benefit he receives for his testimony, and this was not disclosed to counsel prior to trial.

The failure to disclose Looney's plea agreement is a Giglio claim. Giglio made clear that the Brady rule applies to the non-disclosure of evidence affecting the credibility of a witness if the reliability of the witness may be determinative of guilt or innocense. See, 405 U.S. at 154-55, 92 S. Ct. at 766. A promise of leniency made to a key witness---in this case James Looney---in return for testimony is impeachment evidence to which Movant was entitled. See id.

Movant has established the three (3) prongs of Giglio, in that the government withheld the evidence, which is favorable and

is material. Had the jury heard that Chenault and an unidentified male purchased the gun together, and that it was left in a case, in a room where she was known to be, and that James Looney received the benefit of avoiding a 30-year sentence in exchange for testifying against Movant, a different outcome is reasonably probable on the count of 18 U.S.C. 922(g). A petitioner demonstrates "reasonable probability" of a different result when the state's non-disclosure "undermines the confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 682, at 678, 105 S. Ct. at 3381, 87 L. Ed. 2d 481 (1985). A motion for new trial under Rule 33 is required when the use of false testimony "creat[ed] a false impression of material fact." United States v. Briscoe, 101 F. 4th 282, 298 (4th Cir. 2024). "The government does not have to solicit the false evidence; it is enough if the government allows the evidence to go uncorrected when it surfaces." United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987)(citing Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)).

Testimony from Looney on Day 2 during direct examination by AUSA Stone on Day 2 claims that Movant knew the gun was in the house because he paid cash for the gun at the store. The record from Chenault makes this impossible, because the statement on the record from Willie Stout contradicts this. Therefore, Movant has satisfied the necessary elements under Giglio and Brady, and the interests of justice now demand a new trial.

VII. REQUEST FOR AN EVIDENTIARY HEARING

Mr. Pickett respectfully requests an evidentiary hearing concerning:

1. The ATF and FBI report used in Chenault;
2. The circumstances surrounding the Adams Arms M4 rifle purchase;
3. Statements by Jessica Chenault;
4. Testimony or records involving Willie Stout; and
5. Any discrepancies between the Government's testimony at

trial and the newly discovered evidence.

## VIII. CONCLUSION

WHEREFORE, Mr. Pickett respectfully requests that this Court:

1. Grant this Motion for New Trial pursuant to Fed. R. Crim. P. 33;
2. Conduct an evidentiary hearing;
3. Order disclosure of all reports and records containing the firearm transaction; and
4. Grant such other relief as justice so requires.

June 24, 2026

Respectfully submitted,

Rodney Pickett, counsel pro se
Reg. No. 554818-510
FCI Fort Dix
PO Box 2000
Joint Base MDL, NJ 08640